KATIE J. LAMARCHE *vs.* JOHN C. LUSSIER.

No. 05-P-18.

Middlesex. September 15, 2005. - April 3, 2006.

Present: LENK, DUFFLY, & KATZMANN, JJ.

*Jurisdiction,* Personal, Nonresident. *District Court,* Jurisdiction. *Waiver.*

The defendant in an abuse prevention proceeding did not waive his defense of
lack of personal jurisdiction by appearing at a hearing to extend the protec-
tive order, where the defendant had asserted the defense at the outset of the
action and again in multiple objections both in his motions to dismiss and
to continue, as well as during the original hearing. [889-892]

Nothing in the record of an abuse prevention proceeding suggested that any of
the grounds for assertion of personal jurisdiction over the defendant under
the Massachusetts long-arm statute, G. L. c. 223A, § 3, could be satisfied.
[892-894]

COMPLAINT for protection from abuse filed in the Lowell Divi-
sion of the District Court Department on April 13, 2004.

A motion to dismiss was heard by *James M. Geary,* J., and
the case was heard by *Geoffrey C. Packard,* J.

*Jerome L. Benson* for the defendant.

LENK, J. The defendant, John C. Lussier, appeals from a series
of abuse prevention orders entered against him pursuant to
G. L. c. 209A upon the complaint of the plaintiff, Katie J.
Lamarche.[1] On April 13, 2004, Lamarche obtained an ex parte
order against the defendant from the Lowell Division of the
District Court Department. At an April 27, 2004, hearing to
extend the order, the judge denied the defendant's motion to
dismiss for lack of personal jurisdiction pursuant to Mass.R.
Civ.P. 12(b)(2), 365 Mass. 755 (1974), and extended the order
until July 29, 2004, when, after a hearing, the order was again
extended. We reverse.

---

[1]Lamarche neither filed a brief in connection with this appeal nor appeared
for argument.

1. *Background.* The plaintiff was born and raised in Massachusetts, where she lived for twenty years, while Lussier was raised in New Hampshire. The parties had an intimate relationship of about two years' duration. During that time, in December, 2002, Lamarche moved to New Hampshire to live with the defendant. A month later, Lussier joined the United States Navy as an intelligence officer and was stationed in the State of Washington. Lamarche joined Lussier in Washington during the summer of 2003 and bore their son, Adam,[2] on June 27, 2003.[3] She moved back to New Hampshire briefly in mid-autumn of that year, but then soon returned to Washington.[4] With Adam, she returned permanently to Massachusetts in April, 2004.

Lamarche's April 13, 2004, affidavit in support of her application for an abuse prevention order recites that Lussier repeatedly threatened to kill her, warning her that, as an intelligence officer, he could always discover her whereabouts. She attested that Lussier carried knives, hit her on one occasion, threatened to hurt Adam,[5] and, during one fight, stabbed and destroyed her cellular telephone. Lamarche also stated that Lussier had called her mother to tell her that she would never see her daughter again and should say goodbye.[6] The record suggests that all of these incidents took place while Lamarche and Lussier were in Washington. Lamarche does not indicate that any communications were made or received in Massachusetts.

At the April 27, 2004, hearing, Lussier, through counsel, moved both to continue the matter pursuant to 50 U.S.C. App. § 521(d) (Supp. 2005),[7] and to dismiss Lamarche's complaint

---

[2] A pseudonym.

[3] Although not germane to our conclusion, the record is unclear as to the birthplaces of both Lussier and Adam. In response to the judge's question confirming the date of Adam's birth, Lamarche stated, "He was also born in Massachusetts." Lamarche, however, could have been referring to Lussier, and the judge subsequently noted, without objection, that Adam was born in Washington.

[4] The exact date of Lamarche's return to Washington is not clear.

[5] Lamarche's affidavit states that Lussier threatened to hurt Adam when the child kicked at the back of Lussier's seat, presumably in Washington. There is no further information regarding any subsequent harm or threat to harm Adam, either in Washington or Massachusetts.

[6] The record does not indicate the location of Lamarche's mother when she received this call.

[7] Section 521(d) of 50 U.S.C. App. (Supp. 2005) provides, in relevant part:

on the grounds that personal jurisdiction did not attach. In support of the latter motion, he maintained that since he was not currently and had never been a resident of Massachusetts, and none of the relevant acts occurred in Massachusetts, the requirements of G. L. c. 223A, § 3, the Massachusetts long-arm statute, were not satisfied. The judge allowed the motion to continue; ordered the abuse prevention order continued in effect until a scheduled July 29, 2004, hearing; and twice denied the motion to dismiss, to which the defendant twice objected. At the July 29 hearing, the judge continued the order in effect until January 27, 2005; the order indicates that the defendant personally appeared at the hearing.

2. *Analysis.* A judgment is void if the court from which it issues lacked personal jurisdiction over the defendant. *Colley* v. *Benson, Young & Downs Ins. Agency, Inc.*, 42 Mass. App. Ct. 527, 532 (1997). However, "the moving party must show not only a lack of personal jurisdiction, but also that he or she did not waive the lack of jurisdiction and voluntarily submit to the court's jurisdiction." *Id.* at 529, quoting from 12 Moore's Federal Practice § 60.44[3] (3d ed. 1997). The relevant inquiry thus has two parts: whether there was a waiver and, if there was not, whether there is personal jurisdiction over the defendant.

a. *Waiver.* The question before us is whether the defendant waived the personal jurisdiction defense by appearing at the July 29, 2004, hearing. Such a defense may be waived by conduct, express submission, or extended inaction. *Precision Etchings & Findings, Inc.* v. *LGP Gem, Ltd.*, 953 F.2d 21, 25 (1st Cir. 1992). If a party makes voluntary appearances and contests the case at all stages until judgment is rendered, such conduct gives jurisdiction. *Ingersoll* v. *Ingersoll*, 348 Mass. 209, 210 (1964).[8] The common factors in a waiver of personal jurisdiction are "dilatoriness and participation in, or encourage-

"In an action covered by this section in which the defendant is in military service, the court shall grant a stay of proceedings for a minimum period of 90 days under this subsection upon application of counsel . . . ."

[8]We have made a distinction between a special appearance and a voluntary general appearance. In *Ingersoll* v. *Ingersoll*, 348 Mass. at 21, the defendant made a voluntary general appearance, giving the court jurisdiction. In *Leffler* v. *Todd*, 316 Mass. 227, 232 (1944), the court cited the general principle that a defendant who files a special appearance, but seeks relief beyond the narrow

ment of, judicial proceedings." *Precision Etchings & Findings, Inc.* v. *LGP Gem, Ltd.*, 953 F.2d at 25, quoting from *United States to Use of Combustion Sys. Sales, Inc.* v. *Eastern Metal Prods. & Fabricators, Inc.*, 112 F.R.D. 685, 687 (M.D.N.C. 1986). See *Gahm* v. *Wallace*, 206 Mass. 39, 44-45 (1910) (defendant's assertion of defense other than personal jurisdiction in affidavit indicated intention to submit to jurisdiction of court); *Bishins* v. *Richard B. Mateer, P.A.*, 61 Mass. App. Ct. 423, 428 (2004) (plaintiffs' voluntary appearance as interveners in Florida court gave that court jurisdiction over them, and Florida judgment was accorded full faith and credit in Massachusetts).

The threshold question in these cases is whether the defendant brought the jurisdictional defense to the attention of the court before further proceedings had gotten underway. In *Walling* v. *Beers*, 120 Mass. 548, 550 (1876), the Supreme Judicial Court held that where the defendant appeared specially for the purpose of contending lack of personal jurisdiction and filed an answer that did not waive the objection to personal jurisdiction, his acts did not amount to a waiver of that defense. The court noted

field covered by that appearance, brings himself within the jurisdiction of the court. Similarly, entry of a special appearance without stating any grounds is the equivalent of a general appearance. *Gilman* v. *Gilman*, 327 Mass. 143, 146 (1951). Federal courts have abolished that distinction. *Speir* v. *Robert C. Herd & Co.*, 189 F. Supp. 436, 438 (D. Md. 1960), quoting from *Orange Theatre Corp.* v. *Rayherstz Amusement Corp.*, 139 F.2d 871, 874 (3d Cir.), cert. denied sub nom. *Orange Theatre Corp.* v. *Brandt*, 322 U.S. 740 (1944) (rule 12 of Federal Rules of Civil Procedure "has abolished for federal courts the age-old distinction between general and special appearances"). See *Wyrough & Loser, Inc.* v. *Pelmor Labs., Inc.* 376 F.2d 543, 546 (3d Cir. 1967) (defendant must file timely motion if he appears in order to avoid waiving jurisdictional defense); *Marcial Ucin, S.A.* v. *SS Galicia*, 723 F.2d 994, 997 (1st Cir. 1983) ("it is well settled that a general appearance by a defendant does not constitute a waiver of the defense of lack of personal jurisdiction over the person" as long as defendant timely contests jurisdiction); *Peterson* v. *Highland Music, Inc.*, 140 F.3d 1313, 1318-1319 (9th Cir.), cert. denied sub nom. *Gusto Records, Inc.* v. *Peterson*, 525 U.S. 983 (1998) ("the minimum requirements of Rule 12 are satisfied when a defendant raises the issue of personal jurisdiction in a timely motion to dismiss. In the absence of other factors militating in favor of a finding of waiver [e.g., failing to make evidentiary arguments of any sort and declining to renew the issue when invited to do so by the court, failing to raise the defense in a motion, or raising it for the first time in an answer and then failing to pursue it], this suffices to preserve the issue of personal jurisdiction for appeal").

that "the objection upon the ground of want of jurisdiction was seasonably taken. There was no formal motion that the bill should be dismissed, but it is sufficient that, by the form of his appearance, the objection was brought to the attention of the court. The defendant, by proceeding to trial afterwards, does not lose the right to say that he did not thereby withdraw his protest against the jurisdiction of the court." *Ibid.* See *Harkness* v. *Hyde*, 98 U.S. 476, 479 (1879) ("[i]llegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived").

While nothing in the record suggests that Lussier raised the jurisdictional defense at the July 29, 2004, hearing, on several prior occasions he had unmistakably voiced his objections to the court's assertion of personal jurisdiction.[9,10] Our decisions in *Vangel* v. *Martin*, 45 Mass. App. Ct. 76 (1998), and *Sarin* v. *Ochsner*, 48 Mass. App. Ct. 421 (2000), are not to the contrary. In those cases, we held that active participation in court proceedings without raising the jurisdictional defense constituted a waiver.[11] In contrast, Lussier asserted lack of personal jurisdiction at the outset of the action and again in his multiple objec-

---

[9] Lussier filed a special appearance to contest jurisdiction and a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2). When his motion to dismiss was denied twice during the April 27, 2004, hearing, he renewed his objection twice. The judge noted his objection and stated, "Your motion to dismiss is formally denied on that issue. So that should protect your rights."

[10] The defendant's motion to continue pursuant to 50 U.S.C. App. § 521(d) specifically noted that the filing of that motion "does not waive any defenses the defendant may have and, most importantly, does not subject the Defendant to the personal jurisdiction of this Court." The motion also cited § 202(c) of the Federal Servicemembers Civil Relief Act, 50 U.S.C. App. § 522(c) (Supp. 2005), which states that "[a]n application for a stay under this section does not constitute an appearance for jurisdictional purposes and does not constitute a waiver of any substantive or procedural defense (including a defense related to lack of personal jurisdiction)."

[11] The defendant in *Vangel* v. *Martin* participated in the litigation for three

tions both in his motions to dismiss and to continue, as well as during the initial hearing. We cannot say that the court was not "sufficiently informed of the bases of the defendant's challenges to its jurisdiction . . . ." *Morrill* v. *Tong*, 390 Mass. 120, 125 (1983). Even if Lussier appeared at the July 29, 2004, hearing without renewing his objections, he had given the court sufficient notice of his objection to its jurisdiction to preserve the issue for appeal. There was no waiver.

b. *Assertion of jurisdiction over the defendant.* An assertion of personal jurisdiction over a nonresident defendant poses a two-pronged inquiry: "(1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?" *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). The Massachusetts long-arm statute, G. L. c. 223A, § 3, authorizes jurisdiction to the limits allowed by the Federal Constitution.[12] *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 443 (1972). Even if the facts

years before finally raising the jurisdictional defense in response to the plaintiff's motion for default judgment. *Vangel* v. *Martin*, 45 Mass. App. Ct. at 78-79. In *Sarin* v. *Ochsner*, 48 Mass. App. Ct. at 422-423, after alleging the personal jurisdiction defense in their answer, the defendants failed to raise the defense again in any motion or hearing; they did not assert the defense until almost three years after a default judgment had entered against them. In both cases, then, the court was not put on notice of the jurisdiction issue until the proceedings were well underway.

[12]General Laws c. 223A, § 3, as amended through St. 1993, c. 460, § 86, provides in pertinent part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth; (*b*) contracting to supply services or things in this commonwealth; (*c*) causing tortious injury by an act or omission in this commonwealth; (*d*) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; (*e*) having an interest in, using or possessing real property in this commonwealth; . . . (*g*) maintaining a domicile in this commonwealth while a party to a personal . . . relationship out of which arises a claim for . . . parentage of a child, child support or child custody; or the commission of any act giving rise to such a claim; or (*h*) having been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order of . . . custody . . . [or] child support . . . notwithstanding the subsequent departure of one of the original parties from the

sustain a claim of personal jurisdiction under G. L. c. 223A, § 3, the plaintiff must still meet the constitutional requirements of due process. *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 6. *REMF Corp.* v. *Miranda*, 60 Mass. App. Ct. 905 (2004). The plaintiff bears the burden of establishing sufficient facts to assert personal jurisdiction. *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 151 (1978).

Nothing in the record before us suggests that any of the statutory grounds for the assertion of personal jurisdiction can be satisfied. Lussier lived in the States of New Hampshire and Washington, not in Massachusetts. There is no suggestion of his having any interest in Massachusetts real property, of his having transacted any business here, or of his having contracted to supply services or things in Massachusetts. See G. L. c. 223A, § 3(*a*), (*b*), (*e*). The injuries to Lamarche are asserted to have occurred while Lamarche and Lussier were living together out-of-State. Although § 3(*d*) of c. 223A provides that out-of-State acts can in some circumstances confer jurisdiction, e.g., where the tortious act caused injury in Massachusetts, there is nothing in the record to indicate that Lamarche engaged in a "persistent course of conduct" in this State, also a prerequisite to personal jurisdiction under § 3(*d*). As Lamarche never maintained a domicil in Massachusetts, and the present claim concerns an abuse prevention order, rather than matters of domestic relations, § 3(*g*) does not apply. Last, although the record shows that a paternity action has been filed in the Probate and Family Court, there is nothing to indicate that any of the conditions in § 3(*h*) have been satisfied.

The failure to satisfy the aforesaid requirements of our long-arm statute precludes the need for us to address whether the activities of the defendant were of sufficient dimension to withstand constitutional limitations requiring "certain minimum contacts with [the State] such that [jurisdiction] does not offend 'traditional notions of fair play and substantial justice.' " *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. at 152, quoting from *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316

---

commonwealth, if the action involves modification of such order or orders and the moving party resides in the commonwealth, or if the action involves enforcement of such order notwithstanding the domicile of the moving party."

(1945). Notwithstanding the unsavory conduct alleged, it was error for the judge to have concluded that the requirements for personal jurisdiction had been met and, on this basis, to have denied the defendant's motion to dismiss.[13]

The G. L. c. 209A orders dated April 13, 2004, through July 29, 2004, are vacated.

*So ordered.*

---

[13]Nonetheless, the situation described is of great concern: a victim from out-of-State flees her alleged abuser and seeks refuge in a State with which the abuser has had insufficient contacts to permit the assertion of personal jurisdiction over him. Has the victim no recourse? Our abuse prevention statute would offer such a victim protection if she has first obtained an abuse protection order in the State from which she fled; such an order would be given full faith and credit in Massachusetts pursuant to G. L. c. 209A, § 5A. Nothing in the record, however, suggests that Lamarche got such an order in Washington. Nor is there anything in the record to suggest that Lussier presented any threat to Adam while the child was in Massachusetts. We note in this regard that, under § 2(*a*)(3) of G. L. c. 209B (the Massachusetts Child Custody Jurisdiction Act), a Massachusetts court can award temporary emergency custody of a child to a parent fleeing to Massachusetts from an allegedly abusive situation in another State, thereby acting without personal jurisdiction over the out-of-State parent. See *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 359 (1989); *Orchard* v. *Orchard*, 43 Mass. App. Ct. 775, 778 (1997). Cf. *Khan* v. *Saminni*, 446 Mass. 88, 98 (2006).

It does not appear that the parties raised before the trial court judge any suggestion that, absent personal jurisdiction over Lussier, there was any means by which to afford Lamarche the protection of our statutory scheme, designed to preserve the "fundamental human right to be protected from the devastating impact of family violence." *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. 769, 772-773 (2005), quoting from *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999). This being so, and given the absence of an appellee's brief, we do not address the matter further except to note that courts in Iowa and New Jersey have recently addressed essentially this situation and have taken somewhat different paths to the same end. The courts in both jurisdictions make the distinction between prohibitory and affirmative relief, holding that the former, but not the latter, is available when the court lacks personal jurisdiction over the defendant. See *Bartsch* v. *Bartsch*, 636 N.W.2d 3 (Iowa 2001), citing *Pennoyer* v. *Neff*, 95 U.S. 714 (1877), and *Williams* v. *North Carolina*, 317 U.S. 287 (1942) (on theory that protection of resident from domestic abuse affects only her "civil status," personal jurisdiction over nonresident defendant unnecessary for court to issue protective "stay away" order); *Shah* v. *Shah*, 184 N.J. 125, 138 (2005) (because "issuance of a prohibitory order does not implicate any of defendant's substantive rights," State resident entitled to temporary restraining order providing only prohibitory relief in absence of personal jurisdiction over nonresident defendant).