LINDA MARIE LOEBEL vs. ANDREW J. LOEBEL.

No. 09-P-1783.

Hampden. June 10, 2010. - September 20, 2010.

Present: KANTROWITZ, KATZMANN, & HANLON, JJ.

*Divorce and Separation,* Child custody, Modification of judgment. *Parent and Child,* Custody. *Minor,* Custody.

In the circumstances of a child custody proceeding in which this court had vacated a Probate and Family Court order transferring sole legal and physical custody of two young children from their mother to the father and remanded the matter for further proceedings, on the ground that it was not clear from the judge's findings how the judge had balanced the positive and negative findings of both the mother and the father in determining the best interests of the children, the judge abused his discretion in denying the mother an opportunity to present new evidence so that the judge could address adequately the best interests of the children two years after the original order. [747-749] KANTROWITZ, J., dissenting.

In the circumstances of a proceeding on a complaint for modification of a Probate and Family Court child custody order, filed by the mother after this court vacated the original order and remanded the matter, and before the trial judge issued an amended judgment, there was no error in the judge's dismissal of the complaint, where technically, there was no final judgment to be modified at the time the complaint was filed. [749-750]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on January 16, 2004.

Following review by this court, 72 Mass. App. Ct. 1118 (2008), a motion to expand the record was heard by *David M. Fuller,* J., and following the issuance of an amended judgment of divorce, a motion to dismiss a complaint for modification, filed on December 16, 2008, was considered by him.

*Viktor Theiss* for the mother.

*Harold N. Robertson* for the father.

HANLON, J. This case appears before us a second time. In a memorandum and order pursuant to Appeals Court rule 1:28,

we vacated and remanded a Probate and Family Court custody order that transferred "sole legal and physical custody" of two young children from their mother to their father because "the judge's findings in support of his order . . . [were] sparse, and therefore [did] not support his order." *Loebel* v. *Loebel*, 72 Mass. App. Ct. 1118 (2008). Prior to the issuance of the memorandum and order, a single justice of this court had stayed the judge's original custody order.

After the case was remanded, the judge refused the mother's request to expand the record to provide evidence of what had occurred during the intervening one and one-half years and dismissed her complaint for modification of the original order. He issued a new order, supplemented only by additional facts from the original guardian ad litem's report. We again vacate the custody order and order a new hearing to focus on the children's then current best interests, and affirm the dismissal of the mother's complaint for modification.

1. *Procedural background.* The parties were married in July of 2002. Their older son was born in March, 2003. The mother filed a complaint for divorce on grounds of irretrievable breakdown of the marriage in January, 2004, while she was pregnant with the couple's second child. By agreement of the parties, the mother was temporarily granted sole legal and physical custody, with visitation for the father and an order for him to pay child support. In December of 2004, after the birth of their second child, the divorce matter was continued while the parents attempted to reconcile.

The reconciliation attempt was unsuccessful, and the parties separated again in March, 2006. On March 16, 2006, the mother sought and received a restraining order, pursuant to G. L. c. 209A, against the father; the father was ordered to stay away from the mother's residence and not to contact her, except during visitation exchanges. That order was extended three times by the trial judge in this case.[1] The last order was issued on March 14, 2007, over one month after trial and eight days before the divorce judgment; the order continued in effect until March

---

[1] In his first extension, the judge eliminated the no contact and stay away portions of the original order but then, twelve days later, reinstated those portions of the order.

14, 2008. A guardian ad litem (GAL) had been appointed in April of 2006 to investigate issues of legal custody, physical custody, visitation, parenting planning, access to the children, anger management issues of both parents, and the mother's desire to relocate to Cape Cod.

After a two-day trial in early February of 2007, the judge issued a judgment of divorce nisi and on March 22, 2007, issued his findings of fact. The judge awarded sole legal and physical custody to the father, allowing visitation for the mother from Thursday through Sunday, except one weekend per month when the children would remain with their father.[2]

As noted above, the mother appealed the order changing custody, a single justice of this court stayed that portion of the judgment, and we then vacated and remanded the custody order for "further proceedings." *Loebel* v. *Loebel*, 72 Mass. App. Ct. 1118 (2008). We concluded that it was "not entirely clear from the findings how the judge balanced the positive and negative findings of both the mother and father in determining the best interests of the children."[3]

After remand, on November 5, 2008, the mother, acting pro se, asked the judge to hold a new hearing to reexamine the status of the parties at that time. She pointed out that two and one-half years had passed since the original guardian ad litem investigation and that the children had been three and two years old at that time. In the interim, the children had begun kindergarten and preschool while living with her. At the same time, she argued that the father had never presented a parenting plan

---

[2]The father was ordered to pay $200 weekly in rehabilitative alimony, through December, 2007, and maintain medical and dental insurance for the children and the mother. The remaining proceeds from the sale of the marital home went to the father.

[3]We also stated, "The judge noted that 'the most significant "third party" support system the children have is the paternal grandparents located closer to the husband's home and work.' The undisputed facts, however, show that the father works in construction, typically until 6:30 or 7:00 P.M. Therefore, it is clear that the father will need assistance with child care. The judge's findings do not reveal the extent to which the father's [parents] can assist with child care and also do not demonstrate how the best interests of the children would be better served by their receiving child care from their grandparents, or from some other source of child care, rather than from their mother." *Loebel* v. *Loebel, supra.*

or an explanation of how the children would be cared for while he worked. Counsel for the father argued that this court's opinion left it to the trial judge to decide whether another hearing was necessary; counsel himself thought it unnecessary, and in any event, he was planning to withdraw from representing the father.

The judge's response to these arguments was not completely clear.

> "I'm going to do this. I'll issue an Order today. I'll set the matter for a further hearing and I'll invite each side to submit and I'll specify what I believe that to consist of which I would submit would be a legal argument from either side so I'll give you an hour or so to submit what you contend are the additional findings that the Court should make in support of your position and if you contend, if either side contends that there is a need for additional evidence to be taken or additional actions to be done other than that you're to submit that to the Court prior to that date and I'll deal with that. That's how I'm going to respond."

When the mother asked the judge to repeat that, he responded, "I can't because I'm just making it up as I go along." He then told the parties that if they wished to submit proposed additional findings on the existing record, he would take them or "[i]f you contend that there's some other additional action that you think the Appeals Court directed this Court to do you're to notify the Court of what that is. Otherwise, I'm not going to do it." He never permitted the mother to argue why a new hearing should be held and he issued a written order ten days later giving the parties thirty days to submit proposed findings based only upon the existing record.[4]

On December 10, 2008, the judge denied without further

---

[4]We recognize that pro se litigants in a contentious divorce proceeding can try the patience of even the most painstaking and long-suffering judge. Nevertheless, this mother believed, at the beginning of the hearing, that this court's decision had given her a new opportunity to support her argument for custody of her children. Her inability to articulate in the moment the precise procedural vehicle to obtain such a hearing should not have ended the matter. See *Carter v. Lynn Hous. Authy.*, 450 Mass. 626, 637 n.17 (2008), quoting from Judicial Guidelines for Civil Hearings Involving Self-Represented Litigants § 3.2 (2006) ("This court has recognized that self-represented litigants must be provided 'the opportunity to meaningfully present their cases' "). Particularly

hearing the mother's motion to expand the record, and without explanation, he also denied her motion to relocate to Franklin, a town closer to the father and his parents. On December 16, 2008, the mother filed a complaint for modification, listing eight changes in circumstances,[5] and seeking joint legal and physical custody. In January, 2009, the judge issued an amended judgment of divorce nisi and additional findings to support the sole legal and physical custody award to the father. He also allowed the father's motion to dismiss the complaint for modification on the grounds that, at the time of the complaint for modification was filed, the original judgment had been vacated by this court; thus, there was no outstanding judgment to modify.

The mother's second appeal argues that the denial of her motion to expand the record, and the affirmation of the award of custody to the father, was an abuse of discretion. Additionally, she argues that the judge's dismissal of her complaint for modification absent an evidentiary hearing was erroneous. A single justice of this court denied her second request to stay the custody order.

2. *Facts.* When the parties were first married, in July of 2002, they lived in Sturbridge, close to the father's family. The father worked as a construction foreman in Easthampton. The mother worked as a technical writer until their first child was born, at which point she became a stay-at-home mother. After

in a case such as this, one that relates solely to child custody, some care should be taken to see that a litigant is fairly heard. See *Adoption of Imelda,* 72 Mass. App. Ct. 354, 365-366 (2008). We note that, eventually, the judge did make a further award of attorney fees to permit the mother to obtain counsel — *after* he had foreclosed her opportunity to expand the record.

[5]The alleged change in circumstances were: (1) the children had continued to reside with her and she was their main caretaker for day-to-day needs; (2) the children were only visiting with their father every other weekend and on holidays; (3) at the time of the trial neither child was in school and now the eldest was in kindergarten and the youngest was in preschool; (4) reports were available from both the children's teachers and their pediatrician on their positive progress; (5) the mother had made efforts to encourage a positive relationship between the father and children and to include the father in their activities; (6) the mother made plans to move to Franklin to reduce the travel time between the two households; (7) the father continued to make child support payments in the amount of $325 per week; and (8) the parties had made progress in their ability to communicate and to keep one another informed of matters related to the children.

the mother filed for divorce in January, 2004, she moved to South Easton to live with her mother while the father lived with his family in Hadley. The mother moved to Plainville in June, 2004. During their brief reconciliation period, the family lived together in Palmer, which was approximately thirty miles from the father's work. After their second separation, the mother moved to Falmouth while the father initially remained in Palmer.

In the judge's original findings, he wholly adopted the findings from the GAL's report, with the exception of her recommendation, which was for joint legal and physical custody.[6] Despite the fact that he had himself three times extended the G. L. c. 209A abuse prevention order, by implication finding that the father presented a likelihood of physical harm to the mother, the judge found that the mother did not establish a pattern of abuse by the father, merely isolated incidents of profane language in the presence of the children, which she embellished to "paint herself as a victim of systematic domestic violence."[7] Rejecting the GAL's recommendation for shared custody, the judge ruled that it was not appropriate given "the *recent* history of the parties" and their "toxic" relationship (emphasis supplied).

The judge then granted sole legal and physical custody to the father, finding that he was the more stable and reliable parent,

---

[6]The GAL recommended the children be placed in the joint legal and physical custody of their parents, the children residing with their mother from Sunday evening through Thursday evening and visiting their father Thursday evening through Sunday evening. She also recommended that a parent coordinator be appointed to "mediate decision making between the two parents" and to make recommendations about mental health services for the parents once they obtained psychological evaluations. Finally, she found that it was "not in the best interests of the [children] to be moved farther away from their father and that the move from Palmer, Ma. to Falmouth, Ma. creat[ed] a very significant barrier to the [children's] opportunity to be parented by their father."

[7]The judge also stated, "The wife in fact provoked many of the incidents between the parties." In support of his conclusion that there was no domestic violence, he wrote "one factor cited by the GAL is that most victims of domestic violence are reluctant to talk about it, while the wife was comfortable in doing so." Neither the judge's findings nor the portion of the GAL's report contained in the record appendix explains the expertise of the GAL on domestic violence matters. Nor is it clear how she arrived at this interesting, but unsupported, conclusion about the willingness of domestic violence victims in general to discuss their abuse. One might well conclude that even a reticent victim would be willing to discuss safety issues with a GAL who would be making recommendations about her children's custody.

although he acknowledged that "both parents are deeply and genuinely committed to their children." In particular, the judge found that the mother's relocation to Cape Cod was not in the best interests of the children as it impeded their ability to maintain a relationship with their father and was "vindictive."

After remand, the judge made additional findings, based only on the evidence that had been before him in 2006, to justify his custody award to the father. He found that sole legal custody for the father was appropriate because of the "flawed level of communication" between the parties, including the mother's move to Falmouth without first informing the father, despite his previous requests for her not to move. The judge's findings relating to physical custody focused particularly on the mother's above move,[8] without the judge's permission, finding that taking the children away from their father and his family was detrimental to the children. He dismissed the mother's reasons for moving, including a subsidized housing approval and a desire to remain close to her own family.

Despite the fact that the mother had always been the primary caretaker of the children, who were then five and four, and that she was a stay-at-home mother with ample free time to spend with them, the judge found that physical custody for the father was appropriate because they "thrived" with their father. In response to the mother's argument that the father was a construction foreman who had always worked very long days and weekends, the judge said only, "Despite Father working full-time, he will still be able to effectively parent the children. He is a foreman and has sufficient seniority to tailor his work hours to spend time with the children . . . . When the Father's work schedule conflicts with spending time with his children, his parents will also assist him in raising the children as he currently lives with his parents at their spacious bed and breakfast." The paternal grandmother's schedule of working as a chemist, a foster parent, and a bed and breakfast manager was not thought to be an impediment to this arrangement. See note 3, *supra.*

---

[8]Seven of the judge's nineteen findings on physical custody relate to the mother's move to Falmouth. We note that a move by itself, from one location within the State to another, even without the court's permission, should not be the sole basis for a custody determination. See *Hale* v. *Hale*, 12 Mass. App. Ct. 812, 816 n.5 (1981); *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 261 (2001).

3. *Child custody.* We agree with the mother that it was an abuse of discretion to deny her an opportunity to present new evidence on remand in order for the judge to address adequately the best interests of these children two years after the original order.

"When determining child custody awards in general, or modifications of custody awards based on changed circumstances, the guiding principle always has been the best interests of the children. . . . 'The decision of which parent will promote a child's best interests is a subject peculiarly within the discretion of the judge.' Discretion allows the judge when determining the best interests of children, to consider the widest range of permissible evidence, including the reports and testimony of a court appointed investigator or G.A.L., evidence of the history of the relationship between the child and each parent, evidence of each parent's present home environment and over-all fitness to further the child's best interests, and the judge's own impressions upon interviewing the child privately in chambers." *Ardizoni* v. *Raymond,* 40 Mass. App. Ct. 734, 738 (1996), quoting from *Bak* v. *Bak,* 24 Mass. App. Ct. 608, 616 (1987).

The judge's findings in a custody case "must stand unless they are plainly wrong," *Rosenberg* v. *Merida,* 428 Mass. 182, 191 (1998), or "clearly erroneous." *Mason* v. *Coleman,* 447 Mass. 177, 186 (2006). "However, we will not sustain an award of custody 'unless all relevant factors in determining the best interests of the child have been weighed.' " *Custody of Kali,* 439 Mass. 834, 845 (2003), quoting from *Rosenberg* v. *Merida,* 428 Mass. at 191. "[A]n ultimate conclusion needs a foundation in the record supported by 'ground-level facts.' " *Prenaveau* v. *Prenaveau,* 75 Mass. App. Ct. 131, 142 (2009), quoting from *Felton* v. *Felton,* 383 Mass. 232, 240 (1981).

When we remanded the case originally, we vacated the custody order based on the sparse support found in the judge's findings. Although we did not explicitly order a new hearing, the judge was charged with assessing the best interests of these children and in order to do so, he had the responsibility "to consider the widest range of permissible evidence" available at the time he was making the renewed determination. *Ardizoni* v. *Raymond,* 40 Mass. App. Ct. at 738. When the original order issued, these

children were four and over two years old; they remained with their mother during the approximately one and one-half years that the case was on appeal — arguably a significant and eventful time in a child's life.[9] In fact, the mother's complaint for modification detailed a number of changed circumstances in both the children's and parents' lives — an indication that an evidentiary hearing, and perhaps a second GAL investigation, was necessary to gauge the best interests of the children at that time. See *Hale* v. *Hale*, 12 Mass. App. Ct. 812, 821 (1981), where this court reversed a custody decision and remanded the case for further proceedings, observing, "As more than a year has elapsed since the original hearing and circumstances may have changed in the meantime, such proceedings shall include the hearing of additional evidence if either party or the judge so elects."

Further, "physical force within the family is both intolerable and too readily tolerated, and . . . a child who has been either the victim or the spectator of such abuse suffers a distinctly grievous kind of harm." *Custody of Vaughn*, 422 Mass. 590, 595 (1996). In *Custody of Vaughn*, the court reversed a custody award to a "father who had committed acts of violence against the mother" because the trial court "failed to make detailed and comprehensive findings of fact on the issues of domestic violence and its effect upon the child as well as upon the father's parenting ability." *Id.* at 596, 599, quoting from *R.H.* v. *B.F.*, 39 Mass. App. Ct. 29, 40 (1995).

In this case, the same judge repeatedly extended an abuse prevention order against the father, while reporting in his findings in support of the divorce judgment that the mother's reports of abuse were not credible. In addition, both the GAL's recommendations and the judge's supplemental findings refer to the need for psychological evaluations for both parents, and yet nothing in the judge's findings indicates whether these evaluations were performed or what their results were. The contradictory findings relating to the presence of domestic violence and

---

[9]One example of how circumstances had changed is that the original visitation order, which gave the children visits with their mother from Thursday night until Sunday did not take into account the fact that the older child had started school and the younger preschool by the time of the remand.

what, if any, effect it had on the children also support our reversal of the custody order and remand for an evidentiary hearing. Cf. *Custody of Zia*, 50 Mass. App. Ct. 237, 244, 245-246 (2000). ("[T]he judge's voluminous findings demonstrate consideration of myriad factors and circumstances relevant to the child's best interests. . . . [I]t [is] apparent, on review of the findings as a whole, that the judge considered the question of abuse and was of the opinion that the present case presented no history or pattern of domestic violence that would preclude an award of custody to the father"). See G. L. c. 208, § 31A.

The custody order is vacated and the case is remanded for a new hearing, focusing on the children's then current best interests. Pending such further proceedings, custody is to remain with the father, subject to the current visitation schedule. On remand, it may be, as the dissent suggests, that the best interests of these children are served by the present arrangement in their father's sole custody, or at least, by not disturbing that arrangement now that it is in place. It may be that there is no basis for concern about domestic violence, despite the restraining order that the judge issued. Nevertheless, any custody determination should be based upon all of the admissible evidence at the time of the hearing, including any psychological reports and any circumstances, including particularly the nature of the parents' relationship and their ability to cooperate in parenting that may have changed since the original order in March, 2007.[10]

4. *Complaint for modification.* The mother also argues that the complaint for modification was erroneously dismissed as she sought to modify both the custody and the visitation portions of the judgment and listed several substantial and material changes in the complaint. "General Laws c. 208, § 28, authorizes the court to 'make a judgment *modifying its earlier judgment* as to the care and custody of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of

---

[10]Although the judge's promptness in adjudicating this case upon remand from the single justice was admirable, in light of views expressed during those proceedings, we think that a fresh look is appropriate, and accordingly direct that the matter be considered by a different judge on remand from this opinion.

the children.' " *R.S.* v. *M.P.*, 72 Mass. App. Ct. 798, 802-803 (2008) (emphasis supplied). "Changed circumstances are those that occur *subsequent to the judgment* of divorce or subsequent to a prior modification." *Pizzino* v. *Miller*, 67 Mass. App. Ct. 865, 872 (2006) (emphasis supplied). Technically, there was no final judgment to modify at the time that the modification complaint was filed since it was filed after this court had vacated the original custody order and before the trial judge issued an amended judgment. Therefore, there was no error in dismissing the complaint for modification.

The portion of the judgment ordering sole physical and legal custody to the father is vacated, and the matter is remanded on the issue of custody for a new hearing to focus on the children's then current best interests in accordance with this opinion. Pending such proceedings, custody is to remain with the father subject to the current visitation schedule. The judgment dismissing the mother's complaint for modification is affirmed.

*So ordered.*

KANTROWITZ, J. (dissenting). As the trial judge did precisely what this court ordered him to do it is difficult to see how he abused his discretion. As such, I respectfully dissent.

This court heard arguments on the original appeal on May 20, 2008. On October 29, we issued an Appeals Court rule 1:28 decision that vacated so much of the order as it pertained to custody and remanded the case because it was "not entirely clear from the findings how the judge balanced the positive and negative findings of both the mother and father in determining the best interests of the children." *Loebel* v. *Loebel*, 72 Mass. App. Ct. 1118 (2008). Nowhere in our order did we require the judge to reopen or expand the record on remand.

The trial court received our remand order on November 5, and within a week, on November 14, the judge issued an order allowing the parties to submit proposed findings by December 12 based on the existing record. Both parties submitted such findings, and on January 2, 2009, the judge issued his additional findings to provide support for his original decision granting

father sole legal and physical custody of the children. In doing so, the judge acted quickly and diligently in responding to our order.

While I share the majority's view that the better route may have been for the judge to reopen the record, I disagree that his decision to base his additional findings on the existing record was an abuse of discretion, particularly given the language in our order. Contrast *Hale* v. *Hale*, 12 Mass. App. Ct. 812, 821 (1981).

Furthermore, it is somewhat unclear what an expanded record would have revealed. The best picture, as noted at oral argument, comes from the mother's complaint for modification, filed on December 16, 2008, wherein eight "changes in circumstances" were presented,[1] any of which the judge could have discounted. Additionally, the judge had already denied the mother's motion to expand the record on remand on December 10, 2008 (which has not been included in the record appendix before this court), but presumably presented a similar rationale as to why the additional findings on remand should incorporate new evidence.[2]

Given the mother's complaint for modification and motion to expand the record, the judge had to be well aware of what the expanded record would have looked like, and was within his discretion to refuse to reopen the evidence, absent instructions from this court to do otherwise. The judge did what we told him to do. Finding an abuse of discretion under these circumstances is improper. Accordingly, I would affirm.[3]

---

[1] See *ante* 744 n.5.

[2] While I believe that the judge's discretion controls the outcome here, I note that the children have been in the father's custody since February of 2009, and, as conceded by the mother's counsel at oral argument, are doing well in his care.

[3] Additionally problematic is the mandate of the majority that the matter go before another judge. See *A.H.* v. *M.P.*, 447 Mass. 828, 838 (2006) ("Absent clear error, we will not substitute our weighing of the evidence for that of a trial judge who had the opportunity to observe the witnesses and form conclusions about their credibility, even if our weighing of the evidence might have differed from that of the judge").