I.S.H. *vs.* M.D.B.

No. 11-P-224.

Norfolk. November 27, 2012. - May 1, 2013.

Present: KAFKER, COHEN, & TRAINOR, JJ.

*Jurisdiction,* Personal, Paternity proceeding. *Probate Court,* Paternity proceeding. *Paternity. Due Process of Law,* Jurisdiction over nonresident.

Discussion of void judgments and of status orders that are permissible absent personal jurisdiction over a defendant. [557-559]

In a paternity action, participation by the putative father (a Florida resident) in proceedings after the entry of judgment but prior to the filing of a motion for relief from judgment did not constitute a waiver of his defense of lack of personal jurisdiction, where the putative father's objections (made pro se in a facsimile transmission, in his complaint for modification of judgment, and at a hearing) were sufficient to alert the judge to a jurisdictional defense and to the putative father's continued assertion of such a defense. [559-561]

This court remanded a paternity action to the Probate and Family Court for further proceedings to determine whether that court had statutory authority to exercise personal jurisdiction over the putative father, a resident of Florida, and whether the exercise of jurisdiction would comport with principles of due process. [561-564]

COMPLAINT to establish paternity filed in the Norfolk Division of the Probate and Family Court Department on October 12, 2007.

The case was heard by *Angela M. Ordoñez,* J., and a motion for relief from judgment was also heard by her.

*Lloyd D. Godson* for M.D.B.

*I.S.H.,* pro se.

KAFKER, J. At issue in this case are numerous questions regarding personal jurisdiction over the defendant (father). The plaintiff (mother) moved with her child from Florida to Massachusetts allegedly due to domestic violence by the father, a Florida resident and the putative father of the child. In the Probate and

Family Court (Probate Court) in Massachusetts, the mother sought and received a paternity judgment against the father, which included orders for payment of child support and uninsured medical expenses. The father had been served but had not appeared in person or through counsel until after the judgment entered and contempt proceedings had begun against him. Thereafter he filed a pro se modification request, essentially denying the allegations of domestic abuse, claiming that he expected all matters to be dealt with in Florida, and contesting the substance of the order. He then hired counsel, who filed a motion pursuant to Mass.R.Dom.Rel.P. 60(b)(4) based on lack of jurisdiction. The probate judge denied the motion on the grounds that the father had been served, judgment had entered after the period for filing an answer had expired, and the father had filed a modification request after the paternity judgment entered.

The father appeals, contending that the Probate Court lacked personal jurisdiction over him at the time the paternity judgment entered and that he never waived this defense. The mother argues that either the Probate Court had personal jurisdiction over the father because his domestic violence forced her to flee to Massachusetts, or the father subsequently waived any objection to jurisdiction. We conclude that the father has not waived his personal jurisdiction defense by either failing to appear prior to the paternity judgment or filing a pro se modification request that included an objection to jurisdiction. Based on the judge's exclusive reliance on waiver, the absence of fact finding on jurisdiction, and the current incomplete record, we are unable to determine whether a basis existed for the Probate Court to exercise personal jurisdiction over the father in 2007. We therefore reverse the order denying the rule 60(b)(4) motion and remand for further proceedings consistent with this opinion.

*Background.* The father and mother, who were never married to each other, lived together in Florida for a period of time ending in August, 2006. In July, 2006, the mother gave birth to a child, whose birth certificate does not list a father. No paternity testing has been performed relating to the child. The paternity judgment and orders for support and medical expenses at issue here relate to this child.

On or about December 27, 2006, the mother sought and obtained, in a Florida court, an ex parte "temporary injunction for protection against domestic violence" against the father, and a temporary order of custody over the child.[1] The matter was set for a hearing on January 11, 2007; the case was dismissed because the mother did not appear on that date. Since then, the mother has resided in Massachusetts, and the father has resided in Florida.

On October 12, 2007, the mother filed a complaint in the Probate Court seeking a judgment of paternity, custody of the child, and support, as well as other relief.[2] A hearing was held in the Probate Court on November 19, 2007, which was apparently not recorded, after which the judge ordered that "[a]ll issues (custody, retroactive support, protective order, health insurance and visitation) will be addressed at Pretrial Conference on: December 19, 2007."

At the pretrial conference, the mother appeared pro se, and the father did not appear. The mother testified that the defendant is the father of the child, and that nobody else could be the father. The judge noted that only the mother's name, and not the father's, was on the child's birth certificate. The judge also asked the mother if the father "was notified and has chosen not to appear at this moment, although he lives in Florida," and the mother responded, "Um-hmm." The judge further asked, "[H]as he contacted you in any way or said anything to you about being here or support?" and the mother responded, "Yes, I contacted him with regard to my . . . son [who] might have hydrocephal[u]s . . . and [the father] just started screaming at me."

Neither the mother nor the judge addressed below the basis for personal jurisdiction over the father. There were two references to domestic abuse at the pretrial conference. First, in response to a question about visitation, the mother stated that she wanted only supervised visitation because "[t]here was

[1]We cannot discern from the record whether the probate judge was made aware of these past proceedings in Florida when she issued her rulings.

[2]As part of the October filing, the mother apparently included an affidavit accusing the father of domestic abuse. This affidavit was not included in the record appendix in this case but appears on the Probate Court docket. The father was served in Florida with the paternity complaint on November 3, 2007.

domestic violence involved." Additionally, in response to a question from the judge about the father's income, the mother said there was "a record of . . . five domestic violence reports [inaudible]."[3] The reports were not introduced in evidence. On that same day, the judge issued the paternity judgment establishing the defendant as the child's father, granted sole legal and physical custody of the child to the mother, set child support based on an income figure of $100,000 for the father retroactive to the child's birth, and ordered the parties to share the child's uninsured medical expenses.

On May 30, 2008, the mother filed a complaint for an abuse prevention order against the father pursuant to G. L. c. 209A.[4] Shortly thereafter, she filed a complaint for contempt, asserting nonpayment of child support, and a complaint for modification, seeking payment of medical expenses. On or about July 15, 2008, the father sent to the Probate Court, via facsimile transmission, a statement contesting service of process,[5] denying any violence on his part, and stating his belief that his rights were to be decided at a Florida court hearing in January, 2007, at which the mother did not appear.[6] He also provided a telephone number for the court to contact him during a hearing scheduled for the following day. He was not contacted by the court, nor did he appear at the hearing. On October 29, 2008, the judge entered judgments in the mother's favor on both complaints, holding the father in contempt and increasing his obligation to pay for medical expenses.

On October 7, 2009, the father filed a complaint for modification, requesting a reduction in child support. In the complaint, he again contested service of the original complaint, provided income figures far lower than what the mother had stated, and added: "[The defendant] faxed 7/15/08 request for phone presence at second hearing[, which was] ignored. All matters in this case were to be heard in Orange County [Florida] Court 1/11/07,

---

[3]At the hearing, the mother estimated the father's income at "[s]omewhere close to" $300,000 from a solar panel company he owned.

[4]The reasons why this order was sought or granted do not appear in the record.

[5]The father has not pressed before this court the argument that service was improperly made.

[6]The father's statements were not sworn to or submitted in affidavit form.

case #06-DR-0019910-0." The mother answered and counter-claimed for arrearages in child support and medical expenses. The judge held a pretrial conference, at which the mother was present and the father appeared by telephone. A trial date on the father's modification complaint was set for September 13, 2010.

Shortly before this scheduled trial date, the father, represented for the first time by counsel, moved for relief from the paternity judgment on the basis that the Probate Court lacked personal jurisdiction over him, and therefore the paternity judgment was void except as to custody of the child.[7] The mother did not file a timely opposition. The judge held a brief, nonevidentiary telephonic hearing with counsel and denied the motion. On September 10, 2010, she endorsed the motion as follows: "The within motion is hereby denied. [The defendant] was properly served at the address he continues to reside in. Case went to Judgment at a Pretrial Conference hearing on 12-16-07 [*sic*], after the answer period had expired. Defendant has filed a modification set for trial 9-13-10." She made no further findings or rulings specifying the basis for personal jurisdiction over the father.

*Discussion.* 1. *Void judgments.* A motion for relief from judgment pursuant to Mass.R.Dom.Rel.P. 60(b)(4), which is identical to Mass.R.Civ.P. 60(b)(4), 365 Mass. 828 (1974), seeks to set aside a final judgment on the basis that it is void. "A judgment is void if the court from which it issues lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law." *Harris* v. *Sannella*, 400 Mass. 392, 395 (1987). See *Colley* v. *Benson, Young & Downs Ins. Agency, Inc.*, 42 Mass. App. Ct. 527, 533 (1997) (*Colley*). "A court must vacate a void judgment. It may not vacate a valid one. No discretion is granted by the rule." *Field* v. *Massachusetts Gen. Hosp.*, 393 Mass. 117, 118 (1984). See *Colley, supra* at 533. "Notwithstanding the powerful interest in finality of judgments, a motion for relief from a judgment which was

---

[7]The father takes the position that the court had the authority to enter the order for custody pursuant to G. L. c. 209B, § 2. Custody is not at issue in this appeal. We note that G. L. c. 209C, § 10(*b*), inserted by St. 1986, c. 310, § 16, provides that "[p]rior to or in the absence of an adjudication . . . of paternity, the mother shall have custody of a child born out of wedlock." See *Smith* v. *McDonald*, 458 Mass. 540, 545 (2010).

void from its inception lies without limitation of time." *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 31 (1983).

2. *Permissible status orders absent personal jurisdiction over defendant.* In determining what, if any, part of this judgment is void for lack of personal jurisdiction, it is important to recognize that "a court may adjudicate matters involving the status of the relationship between multiple parties even where personal jurisdiction over all of the parties is not established." *Caplan* v. *Donovan*, 450 Mass. 463, 468, cert. denied, 553 U.S. 1018 (2008) (*Caplan*). For example, "a Massachusetts court can award temporary emergency custody of a child to a parent fleeing to Massachusetts from an allegedly abusive situation in another State . . . without personal jurisdiction over the out-of-State parent." *Id.* at 469, quoting from *Lamarche* v. *Lussier*, 65 Mass. App. Ct. 887, 894 n.13 (2006) (*Lamarche*). The court may also issue an order prohibiting a defendant from abusing a plaintiff or child who has fled to Massachusetts. "This authority stems from a State's 'rightful and legitimate concern' in the status of 'persons domiciled within its borders,' a concern that is no less legitimate because that status might also affect a person outside of the State." *Caplan, supra* at 468, quoting from *Williams* v. *North Carolina*, 317 U.S. 287, 298-299 (1942). Although having an effect on the defendant, these orders are not deemed to impose an "affirmative obligation" on the defendant. *Id.* at 472 (holding that order prohibiting defendant from "abusing, contacting, or approaching the plaintiff or their child" could validly enter despite lack of personal jurisdiction over defendant because it "contains no affirmative obligation, and therefore it does not require personal jurisdiction"). So long as these orders are "limited to a determination of [an individual's] . . . status within the State," they comport with due process. *Id.* at 469.

In contrast, the paternity judgment and associated child support order in this case go beyond a status determination of the mother and the child and impose an affirmative personal obligation on the defendant. "[A] valid judgment imposing a personal obligation or duty [on a defendant] in favor of the plaintiff may be entered only by a court having jurisdiction over the person

of the defendant." *Id.* at 470, quoting from *Kulko* v. *Superior Ct.*, 436 U.S. 84, 91 (1978).[8]

3. *Waiver.* In denying the rule 60(b)(4) motion in the instant case, the judge relied exclusively on the father's waiver of personal jurisdiction, particularly his failure to appear and file a responsive pleading prior to judgment and his subsequent modification request. See *Colley*, 42 Mass. App. Ct. at 533 ("where it is shown that the judgment was entered by a court against a person over whom the court lacked personal jurisdiction[,] . . . the defense of lack of personal jurisdiction can be waived through nonassertion"); *Lamarche*, 65 Mass. App. Ct. at 889 ("The relevant inquiry thus has two parts: whether there was a waiver and, if there was not, whether there is personal jurisdiction over the defendant").

The father's failure to appear prior to the entry of the paternity judgment is not, however, sufficient to waive the defense of lack of personal jurisdiction. See *"R" Best Produce, Inc.* v. *DiSapio*, 540 F.3d 115, 122-123 (2d Cir. 2008) (properly served defendant who chooses not to appear may bring rule 60[b][4] motion to vacate default judgment); *Jackson* v. *FIE Corp.*, 302 F.3d 515, 522-523 (5th Cir. 2002), quoting from *Insurance Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("[Rule 60(b)(4)] embodies the

---

[8]General Laws c. 209C, § 8, inserted by St. 1993, c. 460, § 72, provides in part that "[u]pon default of the defendant or his failure to personally appear, the court shall make a judgment establishing paternity if a showing is made that the complaint was served in accordance with the applicable rules of court and . . . that sexual intercourse between the parties occurred during the probable period of conception." The judge may have had this statute in mind when entering the paternity judgment, and we recognize that the statute makes no explicit reference to personal jurisdiction. However, a court may not impose affirmative obligations on a defendant in the absence of personal jurisdiction over him. See *Kulko* v. *Superior Ct.*, 436 U.S. at 91; *Caplan*, 450 Mass. at 470-472. Because "[e]very person is responsible for the support of his child born out of wedlock from its birth," G. L. c. 209C, § 1, inserted by St. 1986, c. 310, § 16, a finding of paternity implicitly entails the obligation of child support, with only the amount left to be determined. Cf. *Caplan*, *supra* at 472 n.9. In the absence of personal jurisdiction, a finding of paternity therefore cannot stand. See *Paula M.S.* v. *Neal A.R.*, 226 Wis. 2d 79, 87 (Wis. Ct. App. 1999) (requiring personal jurisdiction in paternity case because "a determination of paternity carries with it potential obligations for support and care of the child, which personal obligations did not exist prior to the paternity determination" [footnote omitted]).

principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds' "). See and compare *Jones* v. *Boykan*, 464 Mass. 285, 295 (2013).

The father, however, did more than fail to appear prior to filing the rule 60(b)(4) motion.[9] The question then becomes whether his participation in proceedings after the entry of the paternity judgment but prior to the filing of the rule 60(b)(4) motion constituted a waiver. In evaluating his conduct, we consider whether he asserted lack of jurisdiction in his initial filings or whether he was dilatory; we also consider whether he "brought the jurisdictional defense to the attention of the court" and pursued it. *Lamarche*, 65 Mass. App. Ct. at 890. See *Vangel* v. *Martin*, 45 Mass. App. Ct. 76, 78-79 (1998) (personal jurisdiction not raised until after three years of litigation); *Sarin* v. *Ochsner*, 48 Mass. App. Ct. 421, 422-423 (2000) (jurisdictional defense included in answer but not pursued while defendants actively participated in litigation). If a defendant clearly objects to jurisdiction and is rebuffed, he may take part in subsequent litigation without waiving the objection, but he may, on the other hand, decide to withdraw the defense and voluntarily engage in the proceedings. See *Lamarche*, *supra* at 889-891, and cases cited.

In his facsimile transmission, in his complaint for modification, and again at the hearing, the father stated his belief that his rights would or should have been determined by the Florida courts. As the father was acting pro se at each of these points, we "liberally construe[]" his submissions, see *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole*, 390 Mass. 409, 410 n.4 (1983). While judges must apply the law without regard to a litigant's status as a self-represented party, see *Mmoe*

---

[9]As explained by the United States Court of Appeals for the Second Circuit: "It might seem anomalous that an appearing party is deemed to waive lack of personal jurisdiction by not properly asserting it in a timely motion or pleading, but a non-appearing party with notice may suffer a default judgment and later seek relief under Rule 60(b)(4). Apart from juridical fixation on the concept of voidness, the unstated rationale for the distinction is very likely that a non-appearing defendant, even with notice, should be spared the burden of defending in a distant forum . . . ." *"R" Best Produce, Inc.* v. *DiSapio*, *supra* at 123.

v. *Commonwealth*, 393 Mass. 617, 620 (1985) ("the rules bind a pro se litigant as they bind other litigants"), our courts have recognized that self-represented litigants must be provided the opportunity to meaningfully present claims and defenses. See *Carter* v. *Lynn Hous. Authy.*, 450 Mass. 626, 637 n.17 (2008); *Loebel* v. *Loebel*, 77 Mass. App. Ct. 740, 743 n.4 (2010). The facsimile transmission included a statement that Brown "contacted [the Florida Department of Children and Families] and the courts regarding [his] rights and was told that Patern[i]ty, visitation and support would be decided during the hearing on 1/11/07 [in Florida]." The father's complaint for modification indicated, more specifically: "All matters in this case were to be heard in Orange County[, Florida,] Court 1/11/07 . . . ." At the telephonic hearing, he reiterated: "[The mother] filed an injunction here [in Florida] . . . . And there was an injunction filed here and when I talked to the courts here, they said that all things, paternity, everything else like that would be heard at this court hearing [at] which she never showed up . . . ." The probate judge was aware that the father was not a resident of the Commonwealth, and that none of the mother's allegations indicated that he had ever transacted business in, or even been to, Massachusetts. See generally G. L. c. 223A, § 3. In these circumstances, his objections were sufficient to alert the judge to a jurisdictional defense, and his continued assertion of such a defense. See *Lamarche*, 65 Mass. App. Ct. at 890-892. Although the father, acting pro se, did not use the words "personal jurisdiction," it was sufficiently clear from the father's reluctance to come to Massachusetts, his statements about proceedings in Florida, and his undisputed nonresident status that he was not having the case heard in Massachusetts voluntarily. Cf. *Loebel* v. *Loebel*, *supra*. We conclude that the father did not waive personal jurisdiction.

4. *Existence of personal jurisdiction*. In order for a court to exercise personal jurisdiction over a defendant, the assertion of jurisdiction must be both authorized by statute and consistent with due process. *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). *Cepeda* v. *Kass*, 62 Mass. App. Ct. 732, 736 (2004). *Lamarche*, 65 Mass. App. Ct. at 892. As explained by the United States Supreme Court: "[A] state court

may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State. The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 291-292 (1980) (citation omitted).

The mother has not identified in the record before us any applicable basis for personal jurisdiction in the traditional long-arm statute, G. L. c. 223A, § 3. She has not suggested, for example, that the father, a nonresident, has ever been domiciled in, transacted business in, engaged in a persistent course of conduct in, or held property in the Commonwealth. See G. L. c. 223A, § 3(*a*), (*d*), (*e*), (*g*). The mother argues, however, that G. L. c. 209D, § 2-201(5), part of the Uniform Interstate Family Support Act (UIFSA), authorizes personal jurisdiction over the father.[10] This statute permits personal jurisdiction in a support or parentage action concerning a child if "the child resides in the [C]ommonwealth as a result of the acts or directives of the [defendant]." G. L. c. 209D, § 2-201(5), inserted by St. 1995, c. 5, § 87. Specifically, she claims that the father, through abusive and violent behavior, caused her to flee the State of Florida and bring the child to Massachusetts.

We had occasion to consider a similar claim of flight from abuse in *Windsor* v. *Windsor*, 45 Mass. App. Ct. 650 (1998) (*Windsor*). In that case, the parties were married in Massachusetts but left in 1966, eventually living together in Florida by 1975. *Id.* at 653. Allegedly due to unspecified "cruel and abusive treatment," the wife, who was pregnant, left the husband in 1977 and returned to Massachusetts, filing an action for divorce and child support eighteen years later. *Id.* at 653, 655. We noted

---

[10]She also cites G. L. c. 209D, § 2-201(8), inserted by St. 1995, c. 5, § 87, which authorizes personal jurisdiction if "there is any other basis consistent with the [C]onstitutions of the [C]ommonwealth and the United States for the exercise of personal jurisdiction," but she has not pointed out any other basis on which jurisdiction is appropriate.

a failure of proof "that the wife and her children were caused 'to flee' from Florida to Massachusetts as a result of any cruel and abusive acts of the husband or any 'directive' he made." *Id.* at 655.

As UIFSA is a uniform statute, we have also looked at cases from other jurisdictions for guidance on the application of this provision. For instance, in *Windsor*, we distinguished *Franklin* v. *Virginia*, 27 Va. App. 136 (1998), a case in which personal jurisdiction was found over the husband who, "after physically assaulting the wife, . . . ordered her and their children out of their home in Africa, causing the wife to have to return to their prior home in Virginia." *Windsor*, 45 Mass. App. Ct. at 655. Courts have also found the uniform statute applicable to situations where there is a pattern of abuse and harassment, particularly if the plaintiff's family or other source of support was in the forum State and the defendant knew or should have known the plaintiff would return there. See *Marriage of Malwitz*, 99 P.3d 56, 58-59, 61 (Colo. 2004) (finding jurisdiction in Colorado over nonresident father who continued to harass and terrorize mother in Texas despite multiple moves in Texas and reports to police); *Sneed* v. *Sneed*, 164 Ohio App. 3d 496, 498-500, 503 (2005) (upholding jurisdiction in Ohio over nonresident father when mother immediately relocated to where her family lived in Ohio after discovering physical abuse of children). On the other hand, one court has held that jurisdiction was not appropriate where there was evidence of one incident of physical abuse occurring a year before the plaintiff decided to leave the State. See *McNabb* v. *McNabb*, 31 Kan. App. 2d 398, 401, 409 (2003).

The record the parties presented to this court is sparse about what abuse occurred in Florida and why a Massachusetts court would have jurisdiction over the defendant based on his conduct in Florida. The references to domestic abuse at the December, 2007, hearing are few and brief, and contain inaudible words at key passages. Also unclear in our record is the timing of, and reasons for, the mother's departure from Florida, and specifically why she moved to Massachusetts rather than attending the proceeding in Florida scheduled to address the abuse. In these circumstances, we cannot determine whether the requirements

of G. L. c. 209D, § 2-201(5), as further explained in *Windsor*, 45 Mass. App. Ct. at 655-656, have been satisfied.

We therefore remand the matter to the Probate Court so that the judge may determine whether the court had statutory authority to exercise personal jurisdiction over the father, and whether the exercise of jurisdiction would comport with due process. See *Cepeda* v. *Kass*, 62 Mass. App. Ct. at 736; *Lamarche*, 65 Mass. App. Ct. at 892. The judge should make detailed findings of fact on jurisdiction, including credibility determinations. An evidentiary hearing is required.

*Conclusion.* The order denying the father's motion for relief from judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*