Wilkins, Douglas H., J.
Here, a personal jurisdiction defense, though pleaded in compliance with Mass.R.Civ.P. 12(b) and 12(h), has been waived by delay in bringing that defense forward, coupled with participation in discovery and motions regarding the merits. The multi-count complaint in this case alleges that the defendants Ziabicki Import Company, Inc. (“Ziabicki”) and Robert Seuffer GmbH & Co. KG (“Seuffer”) are liable for damage to a valuable painting that fell from a wall in David Croll’s (“Croll’j residence, when two allegedly defective wall-hanging nails snapped. The Plaintiff, American International Insurance Company (“AIIC”), sues as Croll’s subrogee. Seuffer has filed the Defendant Robert Seuffer GmbH & Co. KG’s Motion for Summary Judgment (“Motion”) on grounds of personal jurisdiction and on the merits. AIIC has opposed the Motion. After hearing on June 4, 2012 and upon review of the parties’ written submissions, the Court DENIES the Motion.
BACKGROUND
The Parties’ Rule 9A(b) (5) statement[2] and the record establish the following facts.
Mr. Croll hung the painting at issue on a wall in his residence with two Floreat picture hangers approximately ten years ago. On June 11, 2008, the nails securing the two picture hangers snapped in half. As a result, the painting fell from the wall and sustained a tear in its canvas. Seuffer designed, manufactured, sold and/or distributed the allegedly defective picture hangers.
AIIC filed this lawsuit on December 16, 2009, alleging that Seuffer was negligent and breached an implied warranty. It claims that Seuffer was negligent in failing to test and inspect the defective nails. It seeks damages from Seuffer for negligence, breach of an implied warranty and violation of G.L.c. 93A.
Whether AIIC can obtain that relief in Massachusetts turns on the following jurisdictional facts. Seuffer is a privately-owned company organized under the laws of the Federal Republic of Germany with its principal place of business at Bárental 26, 75365 Calw-Hirsau, Germany. It has never had any contacts with or presence in Massachusetts.
In particular, Seuffer has never contracted directly with any businesses located in the Commonwealth of Massachusetts. Nor does it have employees, assets or an agent for service of process in Massachusetts. It is not incorporated, licensed, authorized or registered to do business in Massachusetts. It has hot maintained any office, facility, bank account, mailing address or telephone listing in Massachusetts. Seuffer has not leased or owned property in Massachusetts and performs no services for any person or firm in this Commonwealth. It has never conducted or directed any advertising or marketing activities to or in Massachusetts and has never sold, shipped or introduced any products directly into Massachusetts. It has never earned, derived or received any revenues or income directly from Massachusetts. It has not solicited any business directly from or in Massachusetts, nor has it focused, targeted, directed or conducted any business activities in Massachusetts. It has never had any *97 direct contact, communication or interaction with any person or entity in Massachusetts and has never entered Massachusetts.
Seuffer manufactured the Floreat picture hangers at issue in Germany. It sold the picture hangers to Ziabicki, 2715 Golf Avenue, Racine, Wisconsin. The parties dispute whether that sale took place in Germany or Wisconsin. In any event, from Hamburg, the picture hangers were brought into the United States, presumably into Wisconsin. Seuffer does not advise Ziabicki where to distribute its picture hangers or how to market them. Ziabicki has not agreed to distribute Seuffer picture hangers to any specific location. Once Ziabicki receives the picture hangers from Seuffer, the latter has no control over what happens to them. The parties agree that Seuffer did not sell, package, ship or introduce the picture hangers at issue into Massachusetts and had no knowledge or information that these picture hangers might end up in Massachusetts.
Seuffer has not consented to be sued in the state or federal courts of the Commonwealth of Massachusetts, unless the post-lawsuit activities discussed below amount to such consent.
On March 22, 2010, Seuffer answered the complaint in this case, asserting personal jurisdiction among its defenses, stating that it was appearing specially and expressly reserving its right to contest personal jurisdiction. Seuffer received this Court’s initial tracking order, which required Rule 12 motions to be filed by May 15, 2010. On March 30, 2010, Seuffer served the plaintiff with interrogatories and document requests. On June 25, 2010, Seuffer filed an answer to Ziabicki’s cross claim and cross claimed against Ziabicki.
On August 23, 2010, Seuffer responded to the plaintiffs interrogatories. Among the responses was the following:
Interrogatory Number 9: Please briefly summarize each of the defendant’s defenses to this action including the facts supporting such defense.
Answer: Robert Seuffer objects to this interrogatory to the extent it seeks information protected by the attorney/client privilege, protected by the work product doctrine, generated in anticipation of litigation and/or seeks expert opinion evidence. Subject to and without waiving its objections, however, Robert Seuffer states that discovery is continuing and is not complete. Robert Seuffer presently refers Plaintiff to the product allegedly made the basis of this litigation, the pleadings in this litigation, the persons identified and the documents and records produced to date in this litigation, and the documents attached hereto.
The parties filed three joint motions to extend the tracking order (on September 22, 2010, December 2, 2010, and May 18,2011), at least the first two of which were drafted by Seuffer’s attorneys, but did not seek to extend the deadline for filing Rule 12 motions. On November 18, 2010, Seuffer moved for admission pro hac vice of attorneys from Pennsylvania (Docket #16).
On December 2, 2010, Seuffer served interrogatories and document requests on Ziabicki. It deposed Ziabicki in Racine, Wisconsin on April 21, 2011. On April 27, 2011, in Boston, it deposed Jim Wright, the professional restorer who repaired the painting.[3] On April 29, 2011, Seuffer deposed the AIIC claim adjuster in Berkely Heights, New Jersey. On May 13, 2011, Seuffer’s counsel joined in a request to inspect the evidence, which occurred on August 5, and 8, 2011. On August 5, 2011, Seuffer filed an “emergency” motion to compel an inspection at the Croll residence, which the Court granted over the plaintiffs opposition.
Finally, a different set of facts dictates whether Seuffer is entitled to summary judgment on the merits. A company called Febana supplies the nails for the iype of picture hangers at issue. It obtains the nails from a company called Schmauser. Febana and Schmauser both have quality control procedures to test the nails for the type of picture hangers at issue here. Both of them subject the nails to the uniform test conditions and order specifications. They both test and check the nails. The wire used for the nails must conform to technical supply specifications. The nails generally are certified once they pass this testing. Neither Seuffer nor Febana is aware of any instances in which Febana’s testing of the type of nails at issue has resulted in a rejection of the nails. Neither Seuffer nor Febana has received any complaints that the type of nail at issue was too brittle.
Seuffer sells between four and six million picture hangers per year and is not aware of any other case in which the type of nails at issue has broken. It is not aware of any recalls of the nails that accompany the type of picture hangers at issue. Neither Seuffer nor Febana is aware of any instance where a defectively produced nail succeeded in getting through the quality assurance and quality control procedures that Febana conducts.
AIIC relies upon the physical evidence and the opinions of its expert, Dr. Thomas Eagar, to support its allegations that the “excessive hardness and therefore brittleness of the nails caused them to be susceptible to breaking and ultimately caused them to snap.” Additional details concerning Dr. Eagar’s testimony appear in the “Discussion” below.
DISCUSSION
The facts in this case present the legal issues starkly. Seuffer has an airtight claim that this Court lacks personal jurisdiction over it unless its actions during the course of this lawsuit waived or forfeited that defense.
Considering only pre-litigation for the moment, Seuffer’s motion papers and AIIC’s response disprove any claim that the injury arose from “transacting any *98 business in this Commonwealth,” G.L.c. 223A, §3(a). “For jurisdiction to exist under [§] 3(a), the facts must satisfy two requirements — the defendant must have transacted business in Massachusetts, and the plaintiffs claim must have arisen from the transaction of business by the defendant.” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). Here, there is no “larger systematic effort on [Seuffer’s] part to obtain business from Massachusetts businesses.” Tatro, 416 Mass. at 769. See also Nichols Assocs., Inc. v. Starr, 4 Mass.App.Ct. 91, 96 (1976) (nonresident defendant was not “transacting any business” in Massachusetts where its “contact was limited to the . . . acceptance of services which the plaintiff simply chose to perform in Massachusetts”). While §3(a) receives a broad construction, see Tatro, 416 Mass. at 767, it cannot authorize jurisdiction beyond the limits imposed by due process, which turn on the nature of the nonresident defendant’s contacts with the forum — which are non-existent here. See Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6-8 (1979).
Seuffer has also negated the other potential basis for jurisdiction, G.L.c. 223A, §3(d). It never subjected itself to personal jurisdiction in the Commonwealth for causing tortious injury in Massachusetts by actions outside the state “if [it] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered” in Massachusetts. Id. Seuffer has done nothing that would trigger the “if’ clause.
AIIC does not even try to dispute any of this. Had Seuffer filed the Motion at the outset of the case, dismissal would surely have followed. Seuffer is also correct that its assertion of lack of personal jurisdiction fully complied with the letter of Mass.R.Civ.P. 12. Under Rule 12(b), such a defense may “be asserted in the responsive pleading” or “at the option of the pleader [may] be made by motion.” Rule 12(h)(1), which governs the waiver and preservation of defenses, including the “defense of lack of jurisdiction over the person,” provides that the defense is waived if “(A) omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading . . .” Neither of those circumstances is present. It does not follow, however, that the Court should allow the Motion.
Compliance with Rule 12(h)(1) is necessary but not sufficient to preserve a personal jurisdiction defense. Raposo v. Evans, 71 Mass.App.Ct. 379, 384 (2008) (defense of insufficiency of service of process), citing Burton v. Northern Dutchess Hosp., 106 F.R.D. 477, 481 (S.D.N.Y 1985). See Jones v. Boykan, 79 Mass.App.Ct. 464, 467 (2011). Waiver of a personal jurisdiction defense can occur through “conduct, express submission, or extended inaction.” Lamarche v. Lussier, 65 Mass.App.Ct. 887, 889 (2006). The Court commonly considers such factors as “dilatoriness and participation in, or encouragement of, judicial proceedings.” Id. at 889-90, quoting Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 25 (1st Cir. 1992).
The prevailing interpretation of Mass.R.Civ.P. 12 (h), 365 Mass. 757 (1974), requires a defendant to raise an affirmative defense... within “a reasonable time and prior to participating in discoveiy and litigating the merits of the case,” or run the risk of having such a defense deemed waived.
Jones, 79 Mass.App.Ct. at 466-67, quoting Raposo, 71 Mass.App.Ct. at 383. See also Plunkett v. Valhalla Investment Services, Inc., 409 F.Sup.2d 39 (D.Mass. 2006). While these cases addressed the defense of insufficiency of service of process (Mass.R.Civ.P. 12(b)(5)), the principle applies equally to the related defense of lack of personal jurisdiction under Rule 12(b)(2). See Jones, 79 Mass. at 466 (referring to the “want of personal jurisdiction” as a “corollaiy” of the “defense of insufficient service of process”). Indeed, Rule 12(h)(1) treats those two defenses in the same way for waiver purposes, even as Rule 12(h)(2) and (3) treat other Rule 12(b) defenses more leniently as to waiver.[4]
Federal authority guides interpretation here, because Mass.R.Civ.P. 12 has effectively the same wording as the federal rule. Raposo, 71 Mass.App.Ct. at 383. The Appeals Court has cited federal authority applying the Jones-Raposo standard to the defense of personal jurisdiction. Id. at 383-84, citing Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1297 (7th Cir. 1993) (The defendant’s initial, effective assertion of a personal jurisdiction defense was later waived by litigation of the case on the merits).[5] The federal cases reason that assertion of the defense, followed by active litigation of the merits of the case, conflicts with the goal of Rule 12(h)(1) “to expedite and simplify proceedings . . .” Id. at 384, quoting Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990). See also Plunkett, 409 F.Sup.2d at 41-42; Burton, 106 F.R.D. at 481 (“[A] prompt motion to dismiss would have saved all parties and the court the expense of years of discoveiy, pretrial conferences and motions relating to discovery and to the merits of the complaint”).
Moreover, it is incongruous for a defendant to litigate the merits after pleading a personal jurisdiction defense. A challenge to personal jurisdiction represents to the Court that the defendant lacks sufficient contacts with and activity in Massachusetts to “invok[e] the benefits and protections of its laws.” Tatro, 416 Mass. at 772, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 475 (1985). Personal jurisdiction is not a mere strategic tool. It originates in “traditional notions of fair play and substantial justice” that arise from attempts to litigate against a non-resident who has not invoked those benefits and protections. International Shoe Co. v. Washington, 326 *99 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940) (emphasis added). Yet, Seuffer’s choice to litigate this case on the merits unquestionably invokes “the benefits and protections” of Massachusetts’ laws — including the procedural rules compelling an adverse party to disclose information not otherwise available — and consumes the time and resources of the Commonwealth’s publicly-funded courts. After a defendant has, for nearly two years, accepted those benefits, protections and privileges to extract the merits-related information it wants, “fair play and substantial justice” cut the other way. At a minimum, the principles giving rise to the defense of lack of jurisdiction no longer support dismissal in such circumstances.
Seuffer attempts to distinguish Jones and Raposo on the ground that the defendants in those cases had defaulted. True, Jones arose in the context of the denial of a Rule 60(b) motion to vacate a default judgment entered for failure to answer or otherwise respond to the complaint. But, in Raposo, the defendant made his first motion to dismiss for insufficient service of process before any default was entered, and the Court addressed his second motion on the merits without relying upon an intervening default that had entered for failure to respond to discovery. The rationale of the Massachusetts cases does not turn upon whether or not a default had entered. Indeed, a rule turning on the presence or absence of a default would be perverse where personal jurisdiction is concerned, because default may reflect the defendant’s difficulty in defending against a claim in a distant forum with which it had no significant contact — the very problem against which the personal jurisdiction defense protects.
Under the applicable legal test, Seuffer has waived the Motion. It served its Motion on September 21, 2011, after expiration of the entire discovery period, and twenty-one (21) months after commencement of this action (one and one-half years after pleading lack of personal jurisdiction). In the meantime, Seuffer filed a cross claim against Ziabicki for indemnification on June 24, 2010, seeking affirmative relief from this Massachusetts forum.[6] It actively participated in obtaining discovery on issues concerning the merits, by serving interrogatories and document requests on AIIC and Ziabicki, by taking depositions of witnesses on all topics and by moving to inspect and later inspecting evidence. Some of this discovery bore no substantial relationship to the personal jurisdiction question.[7] It also inspected Croll’s residence during discovery. It asked for and received action from the Court by joining in the motion to compel that inspection and by filing three joint motions to extend tracking order deadlines unrelated to Rule 12(b) motions. The discovery and motion practice went well beyond an inquiry to determine whether it was subject to suit in Massachusetts. It invoked this Court’s rules and rulings on a number of questions affecting only the merits of this case.
Seuffer argues correctly that a nonresident defendant has the right to invoke the Court’s processes to discover and establish the defense of lack of personal jurisdiction. Because it undoubtedly knew its own contacts with Massachusetts, however, its need to discover additional facts was extremely limited. A review of the record shows that Seuffer conducted discovery on the merits of this lawsuit up to the discovery deadline just as any other party expecting to litigate on the merits would do. The other parties incurred time and expense as a result of Seuffer’s efforts. By going that far, Seuffer voluntarily submitted itself to Massachusetts’ laws and jurisdiction.
Finally, Seuffer argues in the alternative for summary judgment on the merits, asserting that the plaintiff has no evidence that a defect existed in the picture hangers or nails. By presenting no expert evidence to support its Motion, it has arguably failed to sustain its burden that, as moving party, to demonstrate “affirmatively . . . that there is no genuine issue of fact on every relevant issue raised by the pleadings.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), quoting Mathers v. Midland-Ross Corp., 403 Mass. 688, 690 (1989). In any event, AIIC has presented evidence that the nails in question failed at a bending angle between zero and five degrees, even though Seuffer’s criteria require that the nail bend at an angle of twenty to sixty-five degrees. AIIC’s expert metallurgist has testified under oath that the nails were excessively brittle due to defects in design and manufacture. A genuine issue of material fact on the question of defect precludes entry of summary judgment for either party.
ORDER
For the above reasons, the Motion is DENIED.

 Seuffer decided to raise its defense on summary judgment (see Cepeda v. Kass, 62 Mass.App.Ct. 732 (2004)) and filed a statement of facts pursuant to Superior Court Rule 9A(b)(5). AIIC responded in accordance with that rule. Ziabicki did not respond, but it does not appear that the Motion really called for a response from it. Seuffer has not requested an evidentiary hearing on the waiver question, and it does not appear that the parties genuinely contest the material facts concerning waiver.

 On January 27, 2011, Seuffer attended Croll’s deposition, taken by AIIC in Boston.

 Mass.R.Civ.P. 12(h)(2) allows certain defenses to be raised “at the trial on the merits,” but does not extend that treatment to personal jurisdiction defenses. The defenses protected by Rule 12(h)(2) are “failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim . . .’’ Rule 12(h)(3) allows dismissal for lack of subject matter jurisdiction “(w]henever it appears by suggestion of a party or otherwise . . .”

 Plunkett, 409 F.Sup.2d at 41-42, cites additional federal authority to the same effect in the context of a personal jurisdiction defense. Illustrating the types of actions that may *100 amount to waiver, Raposo (at id.) also cited Datskow v. Teledyne, Inc., 899 F.2d 1298, 1303 (2nd Cir. 1990), cert. denied, 498 U.S. 854 (1990) (a defendant’s participation in scheduling, discovery and motion practice waived his previously asserted defense of ineffective service of process); Burton, 106 F.R.D. at 481 (a defendant’s three and one-half year delay in filing a motion to dismiss, during which time he attended conferences and participated in discovery and motion practice, waived his properly pleaded defense of improper service).

 A compulsory counterclaim might be treated as a mere self-protective step not bearing upon personal jurisdiction, but Seuffer’s cross claim for indemnification and contribution asserted (at ¶¶2, 3 and WHEREAS clause) a purely contingent claim “in the event that Robert Seuffer is found liability, which liability is categorically denied.” Such a claim, though contemplated by Mass.R.Civ.P. 13(g), does not even arise until after the indemnitee is found liable. Cf. Newell-Blais Post #443, Veterans of Foreign Wars of the United States, Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986) (facts in the underlying action are essential to the indemnification issue). It is not compulsory in this context. In any event, even without the cross claim, the Court would still rule that Seuffer has waived personal jurisdiction.

 See, e.g. Deposition of David Croll, dated January 27, 2011; Deposition of Jim Wright, dated April 27, 2011; Deposition of AICC, through its claim adjuster, dated April 29, 2011; Defendant Robert Seuffer GmbH & Co. KG’s Emergency Motion to Compel Entry upon Land for Inspection, filed August 10, 2011.