NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-934

ADOPTION OF IZA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal relates to the welfare of a child we refer to as Iza.  In 2018, a judge of the Juvenile Court found the mother unfit and awarded permanent custody of Iza to the Department of Children and Families (department), but did not terminate the mother's parental rights.  Following a review and redetermination proceeding in 2023, another judge of the Juvenile Court found the mother unfit and terminated her parental rights.  The mother now appeals from the 2023 decree, arguing that (1) the department failed to stabilize her family over three generations, (2) the Juvenile Court lacked personal jurisdiction, (3) there was not clear and convincing evidence at trial that she was not merely temporarily unfit, and (4) the judge abused his discretion by terminating her parental rights

---

[1] A pseudonym.

because she shared a bond with Iza and a reasonable alternative to termination existed.  We affirm.

Background.  The mother does not challenge the subsidiary findings of fact, and we summarize the relevant findings and uncontested facts from the record, reserving some facts for later discussion.  See Adoption of Garret, 92 Mass. App. Ct. 664, 666 & n.7 (2018).  Iza was born in April 2014.  The department became involved with her welfare in October 2015, after her leg was broken in an altercation between the mother and another adult.  In April 2016, before Iza reached the age of two, the department initiated a care and protection action as to Iza and her siblings.[2]  The department was granted temporary custody of Iza, who was placed in foster care and then with her maternal grandmother.

In 2018, after a nine-day trial, a judge of the Juvenile Court found the mother unfit to parent Iza.  In part, the judge found that the mother repeatedly entered into relationships where she and her romantic partners were aggressors in domestic violence, exposed her children to that domestic violence, and continued to exercise poor judgment in inviting individuals

---

[2] Iza had two siblings at the time, and the department was granted temporary custody of each child in 2016.  By the time of the review and redetermination trial, the mother had five children, none of whom were in her custody.  However, this appeal pertains only to Iza.

against whom she had restraining orders into her home.  The judge also found that the mother's housing had been unstable for the majority of the case and that she left a shelter program after failing to abide by the rules.[3]  The judge awarded the department permanent custody, granted the mother weekly visitation due to her "strong bond with the child," and approved the department's dual planning goals of reunification or adoption.  The 2018 decree was affirmed on appeal.

The review and redetermination proceeding took place over several nonconsecutive dates in 2023.  The findings from the prior proceedings were properly admitted as an exhibit and considered by the judge.  See Adoption of Simone, 427 Mass. 34, 43-44 (1998).  The judge allowed the mother's motion to attend trial virtually, except when she was to testify, to accommodate her anxiety.  However, the mother appeared virtually for only one trial date and failed to appear on all others.  The mother did not testify, and the judge properly drew a negative inference.  See Adoption of Talik, 92 Mass. App. Ct. 367, 371 (2017).

At the conclusion of the review and redetermination proceeding, the judge found that the mother was unfit and that

_____

[3] The judge also considered and made findings regarding the mother's mental health but concluded that her mental health was not itself a reason to find her unfit.

3

her "unfitness [was] not merely a temporary condition," terminated her parental rights, and approved the department's permanency plan for Iza -- that she be adopted by her maternal grandmother. The judge also found that Iza shared a bond with the mother and ordered four annual supervised visits and the provision of annual updates about Iza to the mother.

The judge made 128 subsidiary findings of fact focused on the events following the conclusion of the 2018 proceeding. See Care & Protection of Erin, 443 Mass. 567, 570 (2005) ("In review and redetermination hearings, the judge . . . builds on findings established in the preceding stages. The proper focus of inquiry . . . is on those facts that have undergone some metamorphosis since the previous order or are newly developed" [quotation and citations omitted]). The subsidiary findings show that the mother was assigned several specific tasks by the department as part of a family action plan, which was updated many times prior to the review and redetermination trial. These tasks were intended to address deficiencies in the mother's parenting, including those which formed the basis of the 2018 finding of unfitness. Pursuant to the family action plan, the mother was to continue working with her therapist to address, among other things, her pattern of unhealthy relationships; to meet with a domestic violence counselor for ongoing education and support; to abide by restraining orders; to obtain stable

4

housing; to attend anger management classes; to attend all visits with Iza, court dates, and foster care reviews; and to complete various other tasks.  The mother failed to complete many of these tasks, and the judge concluded that her "parental shortcomings will continue undiminished" because the mother was "unable or unwilling to utilize offered services intended to mitigate the risk of neglect to [Iza]."  To the extent that she complied with the department's assigned tasks, she did not always gain insights or parenting improvements as a result.

In particular, the mother did not complete the domestic violence education assigned by the department and continued to be involved in physical altercations with romantic partners and others, as both a victim and alleged perpetrator, at least some of which led to police responses, arrests, and restraining orders, including restraining orders where the mother was the defendant.  In addition, the mother continued to face housing instability, lived in five different locations in 2019 alone, and was unhoused during this proceeding.  She also failed to complete the anger management course assigned by the department and threatened and harassed department and adoption workers.  On one occasion, she followed an adoption worker out of a court house parking lot down several streets, holding her cell phone camera while revving her engine.  She failed to consistently visit with Iza, and at one visit she did attend in 2022, the

5

department was required to intervene when she grabbed Iza's arm and would not let go. Additionally, the mother did not attend all court dates and foster care reviews, including trial dates for the review and redetermination proceeding. Finally, the mother had diagnoses of posttraumatic stress disorder, anxiety, and learning disabilities, yet she had not consistently participated in mental health treatment intended to address the department's protective concerns. The judge concluded that the mother's need for mental health treatment and her limited participation in such treatment since December 2018 "affect[ed] [her] capacity to assume parental responsibility" for Iza.

At the close of evidence, Iza was nine years old. Other than a brief attempted reunification in 2017, she had been in the department's custody since around the age of two. She was thriving in the care of her maternal grandmother, with whom she had resided since 2018 and who was committed to adopting her. She reported to the adoption worker that she wanted to stay with her grandmother. She was anxious about the prospect of being removed from her grandmother's care. The judge found that Iza's placement with her grandmother was "consistent with [her] best interests, without protective concerns."

Discussion. "In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent

6

is unfit, whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Ilona, 459 Mass. 53, 59 (2011). "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Id.

"The concepts of parental fitness and a child's best interests are not separate and distinct but, instead, are cognate and connected steps that reflect different degrees of emphasis on the same factors" (quotations and citation omitted). Adoption of Flavia, 104 Mass. App. Ct. 40, 45 (2024). In determining a child's best interests, a judge must decide whether "the parent's unfitness at the time of trial may only be temporary" before taking the "extreme step" of terminating the parent's rights (citations omitted). Adoption of Ilona, 459 Mass. at 59. However, a finding that unfitness is only temporary "must rest on credible evidence supporting a reasonable likelihood that the parent will become fit, not on a 'faint hope'" (citation omitted). Id.

1. The department's duty to stabilize the family. Iza, unfortunately, is in the third consecutive generation of her family to be in the care and custody of the department. The

7

mother argues on appeal that the department failed to stabilize her family over the course of decades, and therefore the termination decree must be vacated.  Although we are not unsympathetic to the obstacles the mother has faced since childhood, or her mother before her, her contention here does not rise to the level of appellate argument and will not be reviewed by this court.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019); Adoption of Zak, 90 Mass. App. Ct. 840, 842 n.4 (2017).  See also Adoption of Ilona, 459 Mass. at 61 (even where department failed to make reasonable efforts to prevent removal, judge must still rule in child's best interests); Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997) (department's duty to preserve family contingent on parent's fulfillment of own responsibilities).

2.  Personal jurisdiction.  The mother argues for the first time on appeal that the Juvenile Court lacked personal jurisdiction.  This issue is waived.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) (issue not raised or argued below waived on appeal).  See also Lamarche v. Lussier, 65 Mass. App. Ct. 887, 889 (2006) (personal jurisdiction defense waived by participation in judicial proceedings).

3.  Sufficiency of the evidence.  The mother also argues that the evidence was insufficient to support a finding that her unfitness was not merely temporary.  We disagree.  The judge

8

properly considered the mother's failure to complete and comply with the directives of the department, see Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) (failure to cooperate with department relevant to fitness); her long-standing pattern of relationships infused with domestic violence and her failure to protect Iza from exposure to such violence, see Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021) (domestic violence relevant to fitness); her continuing housing instability, see Adoption of Oren, 96 Mass. App. Ct. 842, 845 (2020) (lack of stable home relevant to fitness); her aggressive conduct toward the child and department workers, see Adoption of Ulrich, 94 Mass. App. Ct. 668, 676 (2019) (difficulty managing anger relevant to fitness); and the mother's mental health concerns, see Care & Protection of Lillith, 61 Mass. App. Ct. 132, 134-135 (2004) (mental health issues relevant to fitness). Additionally, the judge considered the nonexclusive list of fourteen statutory factors relevant in determining a parent's unfitness under G. L. c. 210, § 3, and found that ten were applicable, each of which weighed in favor of finding the mother unfit. Furthermore, the judge properly considered Iza's preference to remain with her maternal grandmother. See Adoption of Rhona, supra. Accordingly, the judge did not err in finding the mother unfit.

Given the mother's failure to improve her parenting in the five years between the 2018 and 2023 decrees, it was also reasonable for the judge to conclude that the possibility that the mother may become fit was merely a "faint hope," not supported by credible evidence (citation omitted).  Adoption of Ilona, 459 Mass. at 59.  The judge appropriately considered "past conduct to predict future ability and performance" (citation omitted).  Adoption of Yvonne, 99 Mass. App. Ct. 574, 579 (2021).  Here, although the mother averred at trial that she was not currently in a relationship, she nonetheless failed to address how domestic violence affected her parenting because she failed to complete the domestic violence education recommended by the department and had continued to be involved with partners with whom she had a history of domestic violence.  She likewise continued to engage in behaviors demonstrating an inability to manage her anger or to place the needs of Iza over her own emotions, such as threatening department workers and grabbing Iza's arm when she was upset during a supervised visit.

The mother argues on appeal that her unfitness flows from her lack of housing assistance through the department and from interruptions to services available to her because of the COVID-19 pandemic.  This contention is unpersuasive.  The mother was provided with housing assistance, but these services were terminated due to the mother's "noncompliance and lack of

follow-up."  Similarly, there is little or no nexus in the record between the COVID-19 pandemic and the mother's participation in services.  For example, the mother received telehealth counseling in 2020 during the pandemic.  Likewise, the mother began to participate in other services in 2021 and stopped participating thereafter.

At bottom, the mother's argument that the recurring causes of her unfitness are resolvable is unavailing because the "mother's rights are secondary to the child's best interests," and the findings here support the judge's conclusion that the mother's unfitness is "reasonably likely to continue for a prolonged or indeterminate period."  Adoption of Ilona, 459 Mass. at 61.

4.  Iza's best interests.  Finally, the mother argues that it was not in Iza's best interests to terminate the mother's parental rights because "a reasonable alternative existed" and because she shared a bond with Iza.  Specifically, the mother argues that the judge should have allowed her more time to resolve the issues underlying her unfitness and that a guardianship, in lieu of an adoption, would still protect Iza's best interests should the mother remain unfit.  We disagree. Where the judge properly found that the mother was unfit and that her unfitness was not temporary, and where Iza was thriving in her grandmother's care, the termination of the mother's

11

rights was not an abuse of discretion.  See Adoption of Ilona, 459 Mass. at 62.  The fact that the judge could arguably have made a different decision does not render the decision he did make "outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Nor did Iza's bond with the mother preclude the termination of the mother's rights in this case, because Iza's "present or future welfare demand[ed] it."  Adoption of Carlos, 413 Mass. 339, 350 (1992).  The judge properly accounted for the parent-child bond by ordering visitation between the mother and Iza. See Adoption of Franklin, 99 Mass. App. Ct. 787 (2021).

Decree affirmed.

By the Court (Desmond,
Sacks & Brennan, JJ.[4]),

Clerk

Entered:  June 27, 2025.

---

[4] The panelists are listed in order of seniority.

12